IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CENTRAL BANK,

    Plaintiff,

v.                                                      No. 14-1163

CHRIS JERROLDS and BERKSHIRE
HATHAWAY HOMESTATE INSURANCE
COMPANY d/b/a THE KANSAS BANKERS
SURETY COMPANY,

    Defendants.
_____

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, DENYING DEFENDANT'S
MOTION TO SEVER, AND REFERRING PLAINTIFF'S REQUEST FOR ATTORNEYS'
FEES TO THE MAGISTRATE JUDGE FOR DETERMINATION
_____

Before the Court are a motion to remand filed by Plaintiff, Central Bank ("Central"), (Docket Entry ("D.E.") 11), and a motion to sever by Defendant, Berkshire Hathaway Homestate Insurance Company d/b/a The Kansas Bankers Surety Company ("Kansas Bankers"), (D.E. 12). The issues having been fully briefed, these motions are now ripe for disposition.

**I. Background**

On June 19, 2014, Central, a Tennessee-chartered bank, filed suit in the Hardin County, Tennessee, Circuit Court against, Chris Jerrolds, a Tennessee resident and Central's former President and Chief Executive Officer, and Kansas Bankers, an entity that neither is organized under Tennessee law nor has its principal place of business in Tennessee. (D.E. 1-1 ¶¶ 1–4.) Central alleges that Jerrolds, fraudulently and without authority, issued various letters of credit on account of Charles Smith to Wayne County Bank; Wilburn Quarries, LLC; First Metro Bank; and Glen Gray between 2010 and 2012. (*Id.* ¶¶ 14–32.) The complaint also states that Jerrold

breached other various fiduciary duties he owed to Central by receiving payments on loans made to Smith, made fraudulent loans to an entity owned by Smith, participated in a series of transactions that harmed Central and benefitted Smith and other parties, conspired to commit fraud in certain real estate transaction for Jerrold's own benefit, and provided improper benefits to third parties. (*Id.* ¶¶ 33–34.) Central brought a breach of contract claim against Kansas Bankers, averring that it issued various insurance policies to Central covering losses related to Jerrolds's conduct but wrongfully failed to pay Central's claim. (*Id.* ¶¶ 10–12, 35–44, 53–57.) Kansas Bankers filed a notice of removal in this Court on July 17, 2014, claiming that diversity jurisdiction exists in the Court under a fraudulent misjoinder theory. (D.E. 1.)

**II. Analysis**

A.     *Removal in General*

As a baseline principle, "[f]ederal courts are tribunals of limited subject matter jurisdiction." *United States v. Field*, 756 F.3d 911, 914 (6th Cir. 2014) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Accordingly, this Court "possess[es] only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. "[T]he party requesting a federal forum . . . bears the burden of establishing federal jurisdiction." *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014) (citations omitted).

Cases originating in state court can, in some circumstances, be removed to federal court. Title 28, section 1441(a) of the United States Code provides that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Kansas Bankers only claims that original federal jurisdiction exists because of diversity of citizenship, as provided for in 28 U.S.C. § 1332. (*See* D.E. 1 ¶¶ 5–6; D.E. 19 at 1–2.) In relevant part, § 1332 grants federal district courts jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." Courts have long interpreted § 1332 to require "complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). Removal based on diversity is also improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The parties do not dispute that the amount in controversy was met in this case, and they appear to agree that only Jerrolds's presence in the lawsuit prevents complete diversity. Kansas Bankers argues, however, that Jerrolds's citizenship should not be considered because he was not properly joined as a party to the action.

B. *Fraudulent Misjoinder*

Kansas Bankers primarily relies on a fraudulent misjoinder theory. Fraudulent *mis*joinder, also called procedural misjoinder, is related to the familiar fraudulent joinder doctrine, which generally provides that a party's citizenship may be ignored for diversity purposes where no colorable cause of action exists against it. *See Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). The Eleventh Circuit established the fraudulent misjoinder doctrine in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). It held that diversity jurisdiction was proper where certain non-diverse parties were improperly joined under Rule 20 of the

3

Federal Rules of Civil Procedure. *Id.* at 1360. The *Tapscott* court reasoned that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* When non-diverse "defendants have no real connection with the controversy," under the court's reasoning, diversity jurisdiction may exist—even though a plaintiff "may have colorable claims against" them. *Id.* The court also specified that it "d[id] not hold that mere misjoinder is fraudulent joinder," but it found that the attempt to join the specific parties was "so egregious as to constitute fraudulent joinder." *Id.* Though "the Sixth Circuit ha[s] not adopted the fraudulent misjoinder doctrine," *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013), it has not expressly rejected it either. Because no relevant controlling precedent exists, this Court must decide whether to apply the doctrine.

Courts considering fraudulent misjoinder arguments after *Tapscott* have split over whether to recognize the doctrine. Several courts have adopted fraudulent misjoinder in some form or cited *Tapscott* with approval. *See, e.g.*, *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir.) (per curiam) ("[I]t might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction. . . . The district court no doubt inadvertently overlooked that this point was timely raised . . . . Because we are confident that the able district court did not intend to overlook a feature critical to jurisdictional analysis, there is no reason to grant mandamus relief at this time." (citing *Tapscott*, 77 F.3d at 1360)), *subsequent mandamus proceeding*, 318 F.3d 626 (5th Cir. 2002); *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 380–81 (D. Md. 2011) (recognizing fraudulent misjoinder but declining to "impose an egregiousness requirement"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504–05 (E.D. Cal. 2008) (holding that *Tapscott*'s rationale "is compelling, especially in the

4

context of [m]ulti[d]istrict [l]itigation," and finding that removal was proper under fraudulent misjoinder principals); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 379–80 (S.D.N.Y. 2006) (recognizing the doctrine but finding that "no fraudulent misjoinder" occurred). On the other hand, many courts have rejected the doctrine. *See, e.g.*, *Stone-Jusas v. Wal-Mart Stores, Inc.*, No. 2:14-CV-00669-JCM-NJ, 2014 WL 5341686, at *3–4 (D. Nev. Oct. 20, 2014) ("*Tapscott* has come under intense scrutiny by courts in this and other Circuits, as well as by prominent commentators. The criticism of *Tapscott* has focused largely on the fact that its fraudulent misjoinder doctrine runs afoul of the well-settled rule that federal jurisdiction is to be narrowly construed, that the fraudulent misjoinder doctrine creates an unpredictable and complex rule, and that questions of joinder under state law do not implicate federal subject matter jurisdiction"); *In re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-CV-2418-FLW, 2014 WL 4544089, at *7 (D.N.J. Sept. 12, 2014) ("Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; indeed, disagreements exist as to numerous questions about the doctrine, and the last thing the federal courts need is more procedural complexity. . . . Absent Third Circuit directives, this Court declines to adopt fraudulent misjoinder." (citation omitted) (internal quotation marks omitted)); *Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355, 1359–60 (W.D. Okla. 2013) ("[T]he court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."), *aff'd sub nom. Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014).

Notably, circuit courts other than the Fifth and Eleventh Circuits have expressed ambivalence regarding fraudulent misjoinder. The Eighth Circuit has "decline[d] to either adopt or reject" the doctrine, finding instead that, even if it adopted it, the egregiousness requirement

had not been met under the case's particular set of facts. *In re Prempro Products Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010). Other circuits have reached similar results or have declined to address the issue. *See Parson*, 749 F.3d at 893 (declining to reach fraudulent misjoinder issue); *Kent State*, 512 F. App'x at 491 n.1 (noting only that the Sixth Circuit has not adopted fraudulent misjoinder); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010) (declining to adopt fraudulent misjoinder because it would not affect the outcome of the case); *Anderson v. Bayer Corp.*, 610 F.3d 390, 394 (7th Cir. 2010) (holding that the court lacked jurisdiction to consider fraudulent misjoinder); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1161 (11th Cir. 2006) (declining to reach fraudulent misjoinder issue); *California Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729 (9th Cir. 2001) (memorandum opinion) (assuming without deciding that fraudulent misjoinder was a valid doctrine but finding that it did not apply).

The decisions of district courts in this circuit also weigh against approving the theory. One opinion has recognized it. *See Asher v. Minnesota Mining & Mfg. Co.*, No. CIV.A. 04CV522KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005) ("The Court agrees with the Eleventh Circuit's holding in *Tapscott* that, just as this Court may find diversity jurisdiction exists where a plaintiff has no possible cause of action against a nondiverse defendant, this Court may also find diversity jurisdiction where diversity is destroyed only through misjoinder of parties."). Other courts to consider the issue, however, have roundly rejected the doctrine. *See, e.g.*, *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011) ("[I]n light of the questionable basis of the Court's authority to conduct fraudulent-misjoinder analysis and the numerous unsettled doctrinal questions, the Court agrees with the other district courts that have left the whole enterprise to the state courts."); *Geffen v. Gen. Elec. Co.*, 575 F.

Supp. 2d 865, 872 (N.D. Ohio 2008) ("[T]he Court declines to follow the *Tapscott* holding and apply the doctrine of fraudulent misjoinder."); *Cent. Ohio Gaming Ventures, LLC v. Goodman*, No. 2:11-CV-223, 2011 WL 1981185, at *9 (S.D. Ohio May 20, 2011) (finding that "there is no real need" for fraudulent misjoinder).[1]

Though "[t]he proper disposition of this issue is not reached, of course, by counting heads," *Cent. Ohio Gaming*, 2011 WL 1981185, at *8, the Court is persuaded by many of the same considerations as other courts that have declined to recognize fraudulent misjoinder. It is doubtful that the concerns about the doctrine's complexity that some courts and commentators have expressed would be adequate justification alone for rejecting it. Unless a district court is granted discretion,[2] it *must* exercise federal subject matter jurisdiction when the requesting party is clearly entitled to invoke it, even if this means navigating thorny issues. *See Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922) (holding that where a party "ha[s] the undoubted right under . . . statute" to federal jurisdiction, a court is "bound to take the case and proceed to judgment" and cannot "abdicate its authority or duty in favor of . . . state jurisdiction"); *Am. Nat. Prop. & Cas. Co. v. Graham*, 370 F. Supp. 2d 819, 821 (E.D. Wis. 2005) (holding that a court "has a duty to take the case and proceed to judgment" when its original jurisdiction is properly invoked, subject to certain exceptions that provide for discretion). But the fact that the removal statutes do not mention fraudulent misjoinder—and the fact that their structure neither anticipates nor necessitates the doctrine—provides sufficient reason to reject the doctrine.

---

[1] Although one district court has said that "[f]raudulent joinder and misjoinder are the law of this Circuit," it did so in the context of considering a request for attorneys' fees under 28 U.S.C. § 1447(c). *Jones Body Shop, Inc. v. PPG Indus., Inc.*, No. 7:11-CV-181-KKC, 2012 WL 1984292, at *4 (E.D. Ky. June 4, 2012). This language could fairly be read to only relate to whether making a fraudulent misjoinder argument was objectively unreasonable. *See id.* To the extent it implies that the Sixth Circuit has approved of fraudulent misjoinder—or even that strong support exists in favor of the doctrine within the circuit—this Court respectfully disagrees.

[2] For example, "district courts *may* decline to exercise supplemental jurisdiction" in certain situations by statute. 28 U.S.C. § 1367(c) (emphasis added).

As noted above, federal courts enjoy only limited subject matter jurisdiction; their authority to hear cases is delineated by the Constitution and by statute. The removal process adopted by Congress makes no reference to fraudulent misjoinder but does provide an alternate method for litigants to land in federal court when a non-diverse party has been improperly joined. Under 28 U.S.C. § 1446(b)(1), a party generally has 30 days after either receiving a copy of the complaint or being served with summons if the complaint need not be served, whichever is earlier, to file a notice of removal. But if the matter is not initially removable, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). A diversity case can be removed if more than a year has passed since its commencement, however, only if "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1). Under this regime, state courts can decide initial misjoinder issues that give rise to diversity jurisdiction, and defendants may then remove the case to federal court by timely filing a notice. While some small number of misjoinder cases will be barred from federal court by the one year limitation on removal, § 1446(c)(1) anticipates just this result.[3] Likewise, "[f]or this [C]ourt to rule on joinder issues before determining whether it has subject matter jurisdiction puts the cart before the horse . . . ." *Halliburton*, 983 F. Supp. 2d at 1359–60. The Court, therefore, joins the other courts and commentators that have found that, in these cases, "the better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance." *Geffen*, 575 F. Supp. 2d at 871; *see also* 14B Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3723 (4th ed. 2015). Until contrary controlling authority exists, the

---

[3] The Court notes, however, that "egregious" conduct—whether it involves misjoinder or not—may conceivably fall under the "bad faith" exception contained in § 1446(c)(1). *See* 14B Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3723 (4th ed. 2015).

8

Court will decline to recognize the fraudulent misjoinder doctrine. *See Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. CIV. 12-131-ART, 2013 WL 28378, at *6 (E.D. Ky. Jan. 2, 2013).[4]

C.  *Fraudulent Joinder*

Although the notice of removal does not mention it, Kansas Bankers argues in its response to Central's motion to remand that Jerrolds was also fraudulently joined. It contends that Central's claims against him are barred by Tennessee's "prior suit pending" doctrine. (D.E. 19 at 14–16.) Assuming that Kansas Bankers did not waive this argument by omitting it from the notice of removal, it lacks merit.[5]

As mentioned earlier, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Hous. Comm'n.*, 576 F.3d at 624 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). A party is fraudulently joined when "no colorable cause of action" exists against it. *Id.* (citing *Jerome-Duncan, Inc. v. Auto-By-Tel,*

---

[4] Kansas Bankers relies on three opinions that addressed similar factual scenarios and held that fraudulent misjoinder occurred. (*See* D.E. 19 at 7–10) (citing *Nsight Technologies, LLC v. Fed. Ins. Co.*, No. 3:09-CV-6-WHB-LRA, 2009 WL 1106868 (S.D. Miss. Apr. 23, 2009); *Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-14-WS (S.D. Miss. Sept. 14, 2004) (no database citation available); *Tri-Miss Servs., Inc. v. Fairley*, No. 2:12-CV-152-KS-MTP, 2012 WL 5611058 (S.D. Miss. Nov. 15, 2012)). These cases, however, are unavailing not because they are factually distinct, but rather because the Court declines to adopt the fraudulent misjoinder doctrine.

[5] A notice of removal may be freely amended during the initial 30-day period for removal, but once that time has passed, "the notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice." *Chaney v. First Am. Nat. Bank*, No. 3:05-0798, 2009 WL 275198, at *9 (M.D. Tenn. Feb. 4, 2009) (quoting *Uppal v. Elec. Data Sys.*, 316 F. Supp. 2d 531, 535 (E.D. Mich. 2004)). Although "technical corrections" are permitted, "new grounds for federal jurisdiction" may not be asserted after the initial 30-day removal window expires. *Id.* (citing *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.,* 5 F.3d 963, 969 (6th Cir. 1993); *Uppal*, 316 F. Supp. 2d at 535). Fraudulent misjoinder and fraudulent joinder are both doctrines that operate to create diversity jurisdiction, but it is unclear whether raising one of these theories after the time for amendment of the notice of removal has expired constitutes relying on "missing allegations [that] may not be furnished . . . ." *Uppal*, 316 F. Supp. 2d at 535 (quoting 14C Charles Alan Wright, et al., *Federal Practice & Procedure* § 3733 (3d ed. 1998)); *see also Evans*, 449 F.3d at 1161 n.1, 1168 (noting, without considering the issue, that the district court found that a fraudulent misjoinder claim not raised in the notice of removal had been waived). The Court need not resolve this question, however, because fraudulent joinder does not apply in this case.

*L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)).[6] The removing party instead has the burden to show "that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168 (6th Cir. 2005) (quoting *Coyne*, 183 F.3d at 492–93). The relevant inquiry is "whether there is arguably a reasonable basis for predicting that the . . . defendant could be liable." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 438 (6th Cir. 2012) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (internal quotation marks omitted). This standard is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Id.* (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011)). Additionally, this Court "must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non[-]removing party." *Id.* (quoting *Coyne*, 183 F.3d at 493) (internal quotation marks omitted).

Kansas Bankers points to pending litigation involving Central and Jerrolds in Hardin County, Tennessee, Chancery Court and contends that it bars Central's current claims against Jerrolds under Tennessee's prior suit pending doctrine. In the chancery matter, which was filed before the present case, Central brought causes of action against Jerrolds for damages related to his unauthorized issuance of certain letters of credit. (*See* D.E. 11-4 at 2–4, 8–9.) In Tennessee, the prior suit pending doctrine generally allows "a party [to] have an action barred on procedural grounds if there was a prior suit pending against him in the same jurisdiction for the same cause of action." *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 622 (Tenn. 2008). To establish a defense of prior suit pending,

---

[6] While the term "fraudulent" may appear to put a plaintiff's purpose at issue, "the motive in joining a party is immaterial to the determination regarding fraudulent joinder." *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168 (6th Cir. 2005) (citing *Jerome-Duncan*, 176 F.3d at 907).

> (1) the lawsuits must involve identical subject matter; (2) the lawsuits must be between the same parties or their privies; (3) the former lawsuit must be pending in a court having subject matter jurisdiction over the dispute; and (4) the former lawsuit must be pending in a court having personal jurisdiction over the parties.

*Cannon ex rel. Good v. Reddy*, 428 S.W.3d 795, 797 n.2 (Tenn. 2014) (quoting *West*, 256 S.W.3d at 623).[7] Because Central does not dispute that the chancery court has personal or subject matter jurisdiction, only the first two elements are at issue. Central argues that this case does not involve the "same parties" and that the subject matter of the two actions is not identical.

At the outset, it is unclear under Tennessee law whether the existence of an additional, unrelated defendant will serve to defeat the "same parties" element. The Tennessee Supreme Court appears to have never addressed the issue squarely, but one of its decisions suggests this result. In *Cockburn v. Howard Johnson, Inc.*, 385 S.W.2d 101, 102 (Tenn. 1964), the plaintiff sued a group of defendants in federal court and then brought suit in state court against the same group of defendants along with one of their corporate relatives. The Court found that "[t]he defendants in these two cases [were] not identical but [were] in effect the same"—but only because their interests and liability in the litigation were aligned. *Id.*[8] This reasoning implies that the existence of an additional defendant that is not aligned with a party in the prior litigation would defeat a prior suit pending defense. Moreover, some authority from the Tennessee Court of Appeals suggests that additional, non-aligned parties will negate the "same parties" element. *See Wiley v. Williams*, No. E200502518COAR3CV, 2006 WL 929264, at *4 (Tenn. Ct. App.

---

[7] The Sixth Circuit has made clear that the prior suit pending doctrine does not operate to bar federal litigation after jurisdiction has been established as it "is a state law doctrine which plainly does not apply to federal courts." *Laney Brentwood Homes, LLC v. Town of Collierville*, 144 F. App'x 506, 511 (6th Cir. 2005) (citing *City of Newport v. Masengill Auction Co.*, 19 S.W.3d 789, 794 (Tenn. Ct. App. 1999)). But because the relevant consideration in a fraudulent joinder analysis is whether the plaintiff has a colorable "cause of action against non-diverse defendants *under state law*," *Coyne*, 183 F.3d at 493 (emphasis added), the Court will assume for purposes of the pending motions that the doctrine is applicable in this context. The Court need not decide the issue, however, because Kansas Bankers's argument is still unsuccessful.

[8] *Cockburn* ultimately held that the doctrine did not apply, however, under an exception occurring when the pending suit was filed in federal court or another state. *Cockburn*, 385 S.W.2d at 102–03.

Apr. 10, 2006). Tennessee law is far from clear in this point, but this Court is bound to resolve all ambiguities in state law in favor of the non-removing party in determining fraudulent joinder. *See Casias*, 695 F.3d at 438. Kansas Bankers was not present in the chancery court litigation, and it does not appear to be aligned with Jerrolds. Therefore, fraudulent joinder is not proper on this ground.

The "identical subject matter" element suffers from the same problems. Kansas Bankers argues that "the element of 'identical subject matter' for the purposes of the doctrine of prior suit pending is not limited to the claims asserted by the plaintiff in his complaint, but encompasses the subject matter of the lawsuit," *Farmers Ins. Exch. v. Shempert*, No. W2013-01059-COA-R3CV, 2014 WL 407903, at *3 (Tenn. Ct. App. Feb. 3, 2014), and that the subject matter of both suits is "Jerrolds'[s] alleged employee dishonesty." (D.E. 19 at 16.) Central, on the other hand, maintains that the chancery court litigation is based on three letters of credit and that the "claims in those cases arise out of and are limited by those three distinct transactions," while the present case involves "numerous acts of fraud and dishonesty" as it relates to Jerrolds. (D.E. 24 at 5.) Whether two cases share "identical subject matter" is bound to turn on how broadly one defines the subject matter of a suit, a point on which Tennessee law is somewhat ambiguous. At least some authority exists that "the legal basis of each action and the relief sought against the parties to the action" will shape an inquiry into the subject matter of the actions. *Fed. Deposit Ins. Corp. v. Chapman*, No. M2011-02433-COA-R3CV, 2012 WL 3801490, at *3 (Tenn. Ct. App. Aug. 31, 2012). Because Central points to some distinction in the relief it seeks in each case and the legal bases it claims relief under, the Court cannot say that it does not have at least a *colorable*

argument against a prior suit pending defense. For this reason, too, fraudulent joinder is inappropriate.[9]

### III. Conclusion

Based on the foregoing, the Court lacks subject matter jurisdiction over this case. Central's motion to remand is therefore GRANTED, and Kansas Bankers's motion to sever is DENIED AS MOOT. Plaintiff's request for an award of attorneys' fees and costs is REFERRED to the magistrate judge for determination. Any objections to the magistrate judge's order shall be made within fourteen days after service of the order, setting forth particularly those portions of the order objected to and the reasons for the objections. Failure to timely assign as error a defect in the magistrate judge's order will constitute a waiver of that objection. *See* Fed. R. Civ. P. 72(a). The Clerk is DIRECTED, pursuant to 28 U.S.C. § 1447(c), to mail a certified copy of this order to the Clerk of the Hardin County Circuit Court.

IT IS SO ORDERED this 31st day of March 2015.

s/ J. DANIEL BREEN<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] Nothing in this order should be read to mean that the prior suit pending defense will ultimately be unsuccessful. That issue may be addressed by the parties on remand to the Hardin County Chancery Court.